# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
    Plaintiff,

v.

ELVIS PEÑA RODRIGUEZ
    Defendant.

CRIMINAL NO. 16-752 (GAG)

**SENTENCING MEMORANDUM**

*The Pain that you've been feeling, can't compare to the joy that's coming.*

    *- Romans 8:18*

Mr. Peña Rodriguez has been incarcerated since October 11, 2014. He has had two and half years to consider the consequences of the decisions he has made. He considers himself a changed man. Mr. Peña Rodriguez has always accepted responsibility for his actions. The domestic violence incident that sent him to prison in October of 2014 replays in his mind every single day. He does not understand who that person was; how he could hurt someone he loved so much.

Days after being arrested in Puerto Rico for that domestic violence incident ICE CAP agents interviewed Mr. Peña Rodriguez at the Bayamon 1072 Facility and served him with an I-871 (Notice of Intent/Decision to Reinstate Prior Order). He was told that once he finished serving whatever jail sentenced he received for the domestic violence incident he would be transferred to Federal custody to face federal criminal charges for illegal reentry. A few weeks later Mr. Peña Rodriguez received a two year sentence and thus began what he describes as the

1

worst and most enlightening experience of his life. On that day he decided he would change his life. He prayed and read the bible. He tried to learn to control his anger. He thought of his daughter, Grisel, and felt determined to act as a role model for her upon his release. Mr. Peña Rodriguez was a model inmate, and tried to deal with what was perhaps the most excruciating and stressful part of his sentence; not knowing how much time he would have to serve once transferred into federal custody.

Mr. Peña Rodriguez was born in Nagua, Dominican Republic, on December 4, 1981 to Quisqueya Rodriguez Garcia and Pedro Peña Valdez. The eldest of five children, he always felt a sense of responsibility to help his parents provide for their family. The sense of responsibility resulted in his dropping out of school in the 8th grade and working. Mr. Peña Rodriguez, evidence of his work ethic and perhaps luck, has never been without a job. He has worked on construction sites for as long as he can remember.

In 2004 Mr. Peña Rodriguez procreated a daughter, Grisel, with his then girlfriend Felicia De La Rosa. Grisel's birth added to Mr. Peña Rodriguez' sense of responsibility and convinced him he needed to take a risk, a leap of faith perhaps, and board a yola hoping to find better opportunities in Puerto Rico. When asked by U.S.P.O Karina Ortiz, during the Pre-Sentence Report interview[1], why he came to Puerto Rico, Mr. Peña Rodriguez simply stated, "a veces allá te venden un sueño que no es la realidad."

Mr. Peña Rodriguez's arrival in Puerto Rico in 2004 marked the beginning of his thirteen year rendezvous with what are perhaps the two most misunderstood and opposite features of the American experience: the American Dream and the American Criminal Justice system. The

---

1 In response to a Defense Motion (D.E. 31 and 32) this Court waived the Pre-Sentence Report and thus one was not generated. The Pre-Sentence Investigation interview was conducted before the Court entered its order.

2

former is ever elusive and the latter is in need of repair and perhaps not the paragon of American excellence and democracy. Although Mr. Peña Rodriguez leaves our country after experiencing some of the more negative aspects of our fragile democracy, he insists that his time in the United States has shown him why America, and its people, are looked upon the world over as a model of fairness and justice. Every country has flaws, he told me, but it was only in the United States where he first experienced the stability of a law-abiding democracy, what success based on merit feels like, and what it means to lay your hands on the most powerful monetary currency; the U.S. dollar.

Mr. Peña Rodriguez embraced the opportunities that came his way in Puerto Rico. He worked every single day he was here and sent three to five hundred dollars every month to his daughter, Grisel. He also helped his parents and siblings. So many people depended on him and he was looked upon as an example by his family of what it meant to sacrifice for those you love.

## MR. PEÑA RODRIGUEZ HAS SUFFERED ENOUGH

Mr. Peña Rodriguez has been incarcerated for over twenty nine (29) months. He has had ample time to think and replay the decisions that replaced his girlfriend, with inmates; his normal clothing with prison garb, and; his small apartment, with cell doors and screaming guards. The last thirteen years have been a whirlwind of ups and downs. He wants to see and care for his daughter, finish his education and create a life of peace and happiness in his native Dominican Republic.

## GUIDELINE CALCULATION AND THE COURT'S ABILITY TO DEPART BASED ON TIME SERVED IN STATE CUSTODY

Mr. Peña Rodriguez was indicted, on December 1, 2016, for violation of Title 8, U.S.C. § 1326(a)(2). Application Note 6 of § 2L1.2(6) of the United States Sentencing Commission Guidelines Manual provides that:

3

> *Departure Based on Time Served in State Custody.—In a case in which the defendant is located by immigration authorities while the defendant is serving time in state custody, whether pre- or post-conviction, for a state offense, the time served is not covered by an adjustment under §5G1.3(b) and, accordingly, is not covered by a departure under §5K2.23 (Discharged Terms of Imprisonment). See §5G1.3(a). In such a case, the court may consider whether a departure is appropriate to reflect all or part of the time served in state custody, from the time immigration authorities locate the defendant until the service of the federal sentence commences, that the court determines will not be credited to the federal sentence by the Bureau of Prisons. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.*
>
> *Such a departure should be considered only in cases where the departure is not likely to increase the risk to the public from further crimes of the defendant. In determining whether such a departure is appropriate, the court should consider, among other things, (A) whether the defendant engaged in additional criminal activity after illegally reentering the United States; (B) the seriousness of any such additional criminal activity, including (1) whether the defendant used violence or credible threats of violence or possessed a firearm or other dangerous weapon (or induced another person to do so) in connection with the criminal activity, (2) whether the criminal activity resulted in death or serious bodily injury to any person, and (3) whether the defendant was an organizer, leader, manager, or supervisor of others in the criminal activity; and (C) the seriousness of the defendant's other criminal history.*

Immigration authorities located Mr. Peña Rodriguez on October 29, 2014 while in custody at the Bayamon 1072 Facility. Mr. Peña Rodriguez is remorseful for his actions during the domestic violence incident that lead to his incarceration in 2014. While the incident included physical aggression he never used or possessed a firearm or any other dangerous weapon. His actions did not result in in the death or serious bodily injury of anyone and according to the Pre-Trial Bail Report submitted by the United States Probation Office on October 25, 2016, he has no other criminal convictions.

**Offense Level Computation**

**Base Offense Level:** The guideline for violating Title 8, U.S.C. § 1326(a)(2) is found in USSG §2L1.2. That section provides that an offense involving the unlawful entering, reentry or remaining of a previously removed alien has a base offense level of eight (8). USSG §2L1.2(a).                                                                 **8**

**Specific Offense Characteristics:** The 2014 domestic violence felony conviction for which a sentence of two (2) years was imposed increases the offense level by eight levels. USSG §2L1.2(b)(3)(B).                                                                                                                                                        **+8**

**Victim Related Adjustment:** None.                                           **0**

**Adjustment for Role in the Offense:** None.                                  **0**

**Adjustment for Obstruction of Justice:** None.                               **0**

**Adjusted Offense Level (Subtotal):** Sixteen                                 **16**

**Chapter Four Enhancement:** None.                                            **0**

**Acceptance of Responsibility:** Mr. Peña Rodriguez has clearly demonstrated acceptance of responsibility for the offense. The offense level should decrease by two levels. USSG §3E1.1(a).                                                        **-2**

**Acceptance of Responsibility:** Mr. Peña Rodriguez has assisted authorities in the investigation or prosecution of his misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level should be decreased by one additional level. USSG §3E1.1(b).   **-1**

**Total Offense Level:** Thirteen                                              **13**

### Criminal History Computation

      Mr. Peña Rodriguez's sole criminal conviction results in a criminal history score of three (3) and places him in a Criminal History Category of II.

### Sentencing Options

### Custody
**Statutory Provisions:** The maximum term of imprisonment is not more than two (2) years. Title 8, U.S.C. § 1326(a)(2).

**Guideline Provisions:** Based upon a total offense level of 13 and a criminal history category of II, the guideline imprisonment range is from fifteen (15) to twenty-one (21) months.

### Supervised Release
**Statutory Provisions:** The Court may impose a term of supervised release of not more than one (1) year. Title 18, U.S.C. § 3583(b)(3).

**Guideline Provisions:** Since the offense is a Class "E" Felony, the guideline range for a term of supervised release is one (1) year. USSG §5D1.2(a)(2).


### Probation
**Statutory Provisions:** For a felony, the authorized term of probation is not less than one (1) nor more than five (5) years. Title 18, U.S.C. § 3561(c)(1).

**Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

**Fines**

Mr. Peña Rodriguez will be returning to the Dominican Republic without a penny to his name. He understands, and accepts, that a special assessment of one hundred dollars is mandatory pursuant Title 18, U.S.C. § 3013. He respectfully requests, however, this Court not impose any further fines.

## CONCLUSION

Mr. Peña Rodriguez's life has been one of struggle, risk, and pain. He was not the first to risk his life hoping to achieve the American dream, and he likely will not be the last. This Court, however, can alleviate some of that pain, by sending him home. Mr. Peña Rodriguez, therefore, respectfully requests this Court sentence him to time served; enough time considering what he has been through and the many more hardships that await him when he returns home.

Should the Court decide that a sentence of time served is not appropriate, Mr. Peña Rodriguez respectfully requests this Court depart, pursuant to Application Note 6 of § 2L1.2(6) of the USSG, and credit him with the time he spent in state custody, from the time immigration authorities located him on October 29, 2014, and instruct the Bureau of Prisons that whatever sentence this Court imposes shall reflects said time.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, this 10th day of March, 2017.

**ERIC A. VOS, ESQ.**
**Federal Public Defender**
**District of Puerto Rico**

S/J<small>UAN</small> J. M<small>ICHELEN</small>
Juan J. Michelen,
Assistant Federal Public Defender,
USDC-PR G02601
241 F.D. Roosevelt Avenue
San Juan, PR   00918-2305
Phone No. (787) 281-4922
Juan_Michelen@fd.org